SPENCER HOSIE (CA Bar 101777)
JAMES T. McCARTT (CA Bar 121983)
HOSIE FROST LARGE & McARTHUR
One Market – Spear Tower #2200
San Francisco, CA 94105
Phone: 415-247-6000
Fax: 415-247-6001

Attorneys for Plaintiff Pixion, Inc.

E-filing

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PIXION, INC.,

    Plaintiff,

vs.

PLACEWARE, INC.,

    Defendant.

Case No.: C 03 2909

COMPLAINT

DEMAND FOR JURY TRIAL

SI

## COMPLAINT

Plaintiff Pixion, Inc. ("Pixion") brings this action for damages and injunctive relief against Defendant PlaceWare, Inc. ("PlaceWare").

### I. INTRODUCTION

1. This action concerns PlaceWare's violation of its confidentiality agreement with Pixion, its misappropriation of Pixion's trade secrets, its infringement of Pixion's patent rights, and its infringement of Pixion's trademark.

2. Pixion invented a computer system that allows real-time web conferencing with multi-speed capabilities. For example, when a web-conference "presenter" wants to share a

COMPLAINT AND JURY DEMAND           1

stream of visual images with an audience of "attendees," the entire audience can see the images in real-time – even if different attendee computers run at different speeds and have network connections of differing bandwidths. This is a substantial improvement over prior web-conferencing systems, which limited all participants to the speed of the slowest computer.

3. Pixion disclosed its system to PlaceWare in confidence, under a License and Distribution Agreement that PlaceWare executed in 1997. Despite termination of the license in 1998, PlaceWare remained under a continuing obligation not to use or disclose Pixion's system. Nonetheless, PlaceWare proceeded to market web-conferencing products that incorporated the principal elements of Pixion's confidential system. Even after Pixion received a patent for its invention in 2002, PlaceWare continued to use the system without consent.

4. All facts alleged herein are alleged on information and belief, except those facts concerning Pixion's own conduct.

## II. THE PARTIES, JURISDICTION AND VENUE

5. Pixion is a Delaware corporation with its principal place of business in Pleasanton, California.

6. PlaceWare is a Delaware corporation with its principal place of business in Mountain View, California. PlaceWare is a wholly owned subsidiary of Microsoft Corporation.

**Jurisdiction**

7. This Court has jurisdiction over Pixion's federal claims under 28 U.S.C. § 1331, 28 U.S.C. § 1338 and 15 U.S.C. § 1121. It has supplemental jurisdiction over Pixion's other claims under 28 U.S.C. § 1367 and 28 U.S.C. § 1338(b).

**Venue**

8. PlaceWare has agreed to venue in this district. In addition, this action may be brought in this district under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400. PlaceWare resides in this district, and it can be found here. A substantial part of the events giving rise to Pixion's

claims occurred in this district. PlaceWare has committed acts of patent infringement, and it has a regular and established place of business here.

**Intra-District Assignment**

9. Pursuant to Civil LR 3-2(c), this case should be subject to district-wide assignment because it is an Intellectual Property Action.

### III. DESKTOP CONFERENCING AND PIXION'S NOVEL SOLUTION

**Desktop Conferencing**

10. Video conferencing technologies are common in large organizations, offering employees a way to communicate with associates at remote locations. With the rapid adoption of the Worldwide Web ("WWW"), software vendors have worked to develop desktop web conferencing -- i.e., conferences using the WWW, existing Internet connections and existing desktop computers.

11. There are, however, technical challenges in conducting conferences over Internet protocol ("IP") networks such as the WWW. One such challenge involves the substantial amounts of data that must be transmitted. Another involves the varying speeds at which individual attendee computers can connect to the WWW.

12. Representation of visual data on a computer screen requires substantial data. A typical screen could have up to one million pixels, with each pixel requiring up to 32 bits of data; one image could require 32 million bits of data.

13. A web conference could be structured so that when the presenter's image changes, the entire new image is transmitted to each attendee. Under this approach, however, presenting a full motion picture to a web conference audience at 25-30 frames (images) per second would require sending approximately 300 million bits per second to each attendee.

14. Even fast Internet connections cannot transmit or receive that much data. This leads to the use of codecs (compression/decompression tools). Compression techniques reduce

the volume of transmitted data, by eliminating redundancy in the data representing an image. Before the content is viewed by an attendee, it is decompressed using decompression techniques.

15. Another challenge lies in the fact that different attendee computers may have connections with quite different data speeds. Some may have slow dial-up modems, while others may have much faster DSL or T-1 connections. If a presenter with a fast connection sends a stream of images to web conference attendees, slower attendees will not be able to keep up, falling further and further behind as their images deteriorate. To avoid this result, the presenter would be forced to proceed at the speed of the slowest attendee.

**The Pixion Solution**

16. Pixion recognized that new techniques were necessary for low-cost, ubiquitous desktop web conferencing. After significant effort and investment, Pixion crafted a new system for real-time web conferencing. The system incorporated techniques that include the following:

    A) Image processing

    B) Unique, distributed codec algorithms

    C) Server mediation

    D) Server-to-server optimization.

17. The Pixion system permits the presenter to transmit at the presenter's own optimum speed, yet it ensures that each attendee receives functionally-intact images regardless of the attendee's connection speed. This multi-speed architecture permits the intelligent loss of unnecessary data, a novel approach relative to preexisting systems. Aspects of the Pixion system are summarized below.

    A) **Image Processing**

18 To create a screen image, a computer program uses drawing commands to tell the operating system which pixels to change on the screen. Prior web-conferencing solutions typically transmitted a sequence of drawing commands to attendee computers, rather than a series of entire images. This approach is superficially efficient, in that one drawing command

usually can be expressed in fewer bits of data that what is required to express the resulting set of pixels on the screen.

19. However, slow attendees often cannot keep pace with a stream of drawing commands, especially when the underlying images are changing rapidly. Moreover, the presenter's own transmission capabilities may not be fast enough to send a complete stream of drawing commands in real-time. To solve these problems, the typical system has slowed the presenter's transmission to the speed of the slowest participant.

20. Pixion's solution does not transmit drawing commands. Rather than try to keep pace with all of the presenter's drawing commands, the system achieves its efficiency by capturing a series of snapshot images from the presenter's screen. This process of image capture proceeds at its own pace, independent of the speed of the presenter's drawing program.

21. A related procedure is the "capture frame" feature, which gives the presenter the option to limit capture to particular regions of the presenter's screen image. In this way, the presenter can focus the system's capabilities on those regions where important changes are occurring.

### B) Codec Algorithms

22. Pixion developed codec algorithms that reduce the volume of data required to be sent. Typically, few things within an image change from moment to moment, making it more efficient to communicate information about what has changed rather than to transmit data containing the entirety of the resulting image. To this end, Pixion's system compares successive images, isolates the differences between those images, compresses this "difference" data, and transmits only the compressed changes.

23. The system captures changed images intelligently, taking into account evolving system conditions. For example, if the network becomes overloaded and so will accommodate less frequent image captures, more drawing commands may well issue and complete between successive captures. Despite this change, the Pixion algorithm still detects only those net

changes from the prior capture to the current capture. In this sense, the algorithm becomes more efficient as the network load increases.

24. The Pixion codec is distributed. That is, it resides in part on the presenter's computer, in part on the server that mediates the conference, and in part on attendees' computers. The portion that runs on the presenter's computer manages the intervals between image capture, the determination of difference data, and the compression of that data.

### C) Server Mediated System

25. Pixion's web conferencing system is server mediated. That is, between the presenter and attendees are one or more servers, sited at points in a network with high bandwidth connections. The presenter forwards a single stream of difference data (image changes) to the server, using the maximum bandwidth available in the connection between them. Sending just one stream to the server is a substantial advantage relative to client-based web conferencing systems that require the presenter to send data directly to each attendee.

26. The server does more than simply replicate and forward data that it receives from the presenter. It assesses the image stream to each attendee, and then intelligently modifies the image stream to the attendee so as to accommodate network bandwidth to that attendee. The attendee computer sends a request to the server when it is ready for the next data packet, so that data is "pulled" by the attendee rather than "pushed" by the server. An attendee with a connection as fast as the presenter will keep up with the presenter, packet for packet; but when a slower attendee pulls the most recent image, it may well lose some of the intervening images that the presenter has transmitted. As a practical matter, fast attendees will display nuanced changes in the image, while slower attendees will display blunter, less nuanced changes. The system thus delivers the image stream to different attendees at different rates, while maintaining its basic integrity in terms of both content and simultaneity.

27. As a further refinement, the server uses image processing techniques to compare differences between the current composite image and the one that a particular attendee last

received. This replicates at the server level the image-difference processing that is undertaken at the presenter.

28. The Pixion system was innovative in its realization that an efficient web-conferencing system should drop data intelligently. Typical network protocols are designed to minimize data loss, and to recapture data inadvertently dropped. In a departure from this paradigm, the Pixion system is configured to: (1) distinguish data that must be retained for image integrity from superfluous data that may be lost; (2) monitor network conditions between the server and each attendee; and (3) intelligently drop data when necessary to accommodate individual attendees.

### D) Server-To-Server Optimization

29. The Pixion system can use multiple servers. By distributing functions across multiple servers, the system can overcome much of the latency (delay), congestion and bandwidth fluctuation inherent in the WWW.

30. In addition, the Pixion system is portable across different platforms. Graphic drawing commands are unique to specific operating systems. By capturing screen images rather than drawing commands, the Pixion system works across different platforms and applications.

31. Through these innovative technologies, Pixion developed a functional desktop web conferencing system. It called this product PictureTalk.

### IV. THE LICENSE AND DISTRIBUTION AGREEMENT

32. PlaceWare, which was incorporated in 1996, had a web conferencing product. As initially conceived, that product envisioned a minimally-equipped attendee computer, with the bulk of the intelligence residing on a server. Before a conference, the presenter would pre-load slides into the server, which would then forward them to all anticipated attendees. Once pre-loading was complete, the conference could begin, with the presenter having the ability to advance through the slides simultaneously on connected attendee computers. PlaceWare used an

"auditorium" metaphor, evoking an on-stage presenter flipping through slides that all attendees can see.

33. PlaceWare's product did not permit real-time collaboration. Therefore, in 1997 it negotiated access to Pixion's system, for bundling with PlaceWare's product. After establishing technical feasibility in discussions covered by a non-disclosure agreement, the parties entered a License and Distribution Agreement ("L&D Agreement") in August 1997.

34. Under the L&D Agreement, PlaceWare secured an original equipment manufacturer ("OEM") license to bundle Pixion's system with the PlaceWare product. PlaceWare would thereby upgrade its web conferencing product to include real-time collaboration and multi-speed features.

35. The L&D Agreement included the following provisions:

> 3.4 Restrictions. Except as necessary to exercise its rights under the Escrow Agreement, **OEM [PlaceWare] shall not (a) disassemble, decompile or otherwise attempt to derive source code from the Software,** (b) make the Software available to any third parties other than as expressly permitted in this Agreement, **(c) modify, adapt, translate or create derivative works based on the Software, (d) reproduce any portion of the Software except as expressly permitted herein,** or (e) authorize any party to do any of the foregoing.

\*\*\*

> 8.1 Confidential Information. "Confidential Information" means (i) the terms and conditions of this Agreement (except for disclosure to potential investors or financial institutions), and (ii) any and all other information disclosed by one party to the other which is marked "confidential" or "proprietary", including oral information which is designated confidential at the time of disclosure, provided that it is reduced to a written summary marked "confidential" which is supplied to the other party within thirty (30) days of the oral disclosure. **All information regarding the Software, including without limitation, all information with respect to the use, installation and operation of the Software, received by OEM from PictureTalk, shall be deemed PictureTalk Confidential Information** whether or not it is designated as confidential.

COMPLAINT AND JURY DEMAND 8

***

8.3     Preserving Confidentiality. **Each party hereby agrees that it shall not use any Confidential Information received from the other party other than as expressly permitted under the terms of this Agreement or as expressly authorized in writing by the other party.** Each party shall use the same degree of care to protect the other party's Confidential Information as it uses to protect its own Confidential Information of like nature, but in no circumstances less than reasonable care. Neither party shall disclose the other party's Confidential Information to any person or entity other than its officers, employees and consultants who need access to such Confidential Information in order to effect the intent of this Agreement and who have entered into written confidentiality agreements with that party consistent with this Section 8.

***

12.3    Effect of Termination. Upon the expiration or termination of this Agreement:

(a)     **OEM shall, within ten (10) days of such expiration or termination (i) return to PictureTalk or destroy all Confidential Information and all copies thereof, any master copies of the Software, and all other material received from PictureTalk and for which OEM has not paid PictureTalk a License Fee; (ii) erase any and all of the foregoing from all computer memories and storage devices within OEM's or its Distributors' possession or control;** (iii) provide PictureTalk with a signed written statement certifying that it has complied with the foregoing obligations; and (iv) provided the Agreement has not terminated due to a breach by PictureTalk, pay any amounts that have accrued hereunder but remain unpaid to PictureTalk. PictureTalk shall, within ten (10) days of such expiration or termination (i) return or destroy all Confidential Information of OEM and all copies thereof and (ii) provide OEM with a written statement certifying that it has complied with the foregoing obligations.

***

(d)     Sections 1, 4.7, 5 (only as necessary under Section 12.3(c)), 7.1, 7.3(c), 8, 9, 10, 11, 12.3, 12.4 and 13 shall

> survive the expiration or termination of this Agreement for any reason.

\*\*\*

> 13.1 **Injunctive Relief**. Each party acknowledges that the breach or threatened breach of Sections 2, 7 or 8 would cause irreparable harm to the other party, the extent of which would be difficult to ascertain. Accordingly, each party agrees that, in addition to any other remedies to which either party may be legally entitled, either party may seek immediate injunctive relief in the event of a breach or threatened breach of such Sections by the other party or its Distributors or any of its or its Distributors' employees or subcontractors.

\*\*\*

> 13.6 **Choice of Law; Jurisdiction, Venue**. This Agreement shall be governed by the laws of the State of California, excluding conflict of law provisions and excluding the 1980 United Nations Convention on Contracts for the International Sale of Goods. For any disputes arising out of this Agreement, the parties consent to the personal and exclusive jurisdiction of, and venue in, the state or federal courts within San Francisco County, California.

36. Pursuant to the L&D Agreement, Pixion provided PictureTalk source code and other confidential information to PlaceWare. This disclosure was subject to the confidentiality provisions of the L&D Agreement.

37. The L&D Agreement was not renewed after the first year, and so expired by its terms on August 31, 1998.

38. In December 1998, Pixion requested PlaceWare to return any Pixion confidential information and to delete any Pixion software that PlaceWare had installed, all pursuant to the L&D Agreement. In January 1999, PlaceWare affirmed in writing that it had deleted all Pixion software from its system.

39. In June 1999, PlaceWare announced version 3.5 of its web conferencing product. According to PlaceWare's press release, version 3.5 included "the breakthrough LiveDemo feature" for demonstrating a presenter's software applications to web conference attendees. It

contained key features from Pixion's product. As PlaceWare explained, the "LiveDemo" features included:

- Ability to capture and broadcast any image or application on the screen – up to the entire computer screen image

- Real-time performance at network speeds ranging from 28k modem to high-speed broadband

- Dynamic recognition of client connection speed and delivery of an optimized frame rate for each individual audience member – so everyone stays in synch with the presenter

- Ability to demonstrate software one-on-one or to large groups of up to 1,000.

These were features from the Pixion system, techniques for which Pixion had shared with PlaceWare in strict confidence.

40. PlaceWare emphasized that LiveDemo possessed multi-speed functionality. That is, unlike prior web conferencing solutions but just like the Pixion system, PlaceWare's product was not limited to the speed of the slowest attendee. Instead, attendees were accommodated individually and dynamically.

41. The LiveDemo product included a capture frame feature. Just like the Pixion system, LiveDemo permitted the presenter to capture a portion of the screen, and to transmit changes in that portion separately. PlaceWare even called this feature "capture frame," the trademarked phrase used for the identical feature in the Pixion system.

42. PlaceWare began to market the LiveDemo product aggressively. It received $18.8 million in third-round financing in September 1999. Ultimately, Microsoft acquired PlaceWare in early 2003, for a sum reportedly approximating $200 million.

43. PlaceWare has developed its product through use of confidential Pixion information. This was not only a breach of the L&D Agreement, but also the misappropriation of

Pixion's trade secrets. With the issue of a patent to Pixion, PlaceWare's continuing use of Pixion information also constitutes patent infringement.

## V. THE PIXION PATENT

44. United States Patent 6,343,313 ("the '313 patent") bears the title "Computer Conferencing System With Real-Time Multi-Point, Multi-Speed, Multi-Stream Scalability." The '313 patent issued on January 29, 2002. The underlying application was filed on March 25, 1997, and a prior provisional application was filed on March 26, 1996.

45. A copy of the '313 patent is attached as **EXHIBIT A**. Pixion is the assignee of that patent.

46. The PlaceWare web conferencing product infringes upon Pixion's rights under the '313 patent.

## VI. PIXION'S CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT
(Common law of California)

47. Plaintiff incorporates the allegations in the preceding paragraphs.

48. Pixion and PlaceWare entered into a written L&D Agreement, providing for the non-disclosure of shared confidential information and limiting the use of that information. PlaceWare has breached the express provisions of that contract, as well as the implied covenant of good faith and fair dealing, by using Pixion's confidential information for purposes not permitted by the contract. Without Pixion's consent, PlaceWare has used the information in developing its own products, disclosed the information to employees whose access was not required to effect the L&D Agreement, and disclosed the information to third parties in its distribution of infringing products.

49. Pixion is entitled to recover the damages caused by PlaceWare's breach of contract.

50. PlaceWare's continuing breaches of contract cause irreparable harm to Pixion. In paragraph 13.1 of the L&D Agreement, the parties acknowledge that injunctive relief is an appropriate remedy. Consistent with that provision, Pixion is entitled to injunctive relief against PlaceWare's conduct.

### SECOND CLAIM FOR RELIEF: UNIFORM TRADE SECRETS ACT
(Cal. Civ. Code § 3426 et seq.)

51. Plaintiff incorporates the allegations in the preceding paragraphs.

52. The information that Pixion disclosed to PlaceWare constitutes trade secrets under California Civil Code § 3426.1(d). That information derives independent economic value from not being generally known to the public or to others who can obtain economic value from its disclosure or use. Pixion made reasonable efforts to maintain the secrecy of its confidential information.

53. Having acquired Pixion's trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use, PlaceWare's conduct in using and disclosing Pixion's trade secrets without Pixion's consent is misappropriation under California Civil Code § 3426.1(b).

54. Under California Civil Code § 3426.3, Pixion is entitled to recover damages for the actual loss caused by PlaceWare's misappropriation. It is also entitled to recover for the unjust enrichment of PlaceWare that is not taken into account in computing Pixion's damages for actual loss. In any event, Pixion is at least entitled to compensation as measured by a reasonable royalty for PlaceWare's use and disclosure of Pixion's trade secrets.

55. PlaceWare's infringement was willful and malicious. Under California Civil Code §§ 3426.3(c) and 3426.4, Pixion is entitled to an award of exemplary damages equal to twice its actual damages, and to an award of its reasonable attorney's fees.

56. Under California Civil Code § 3426.2, Pixion is entitled to an injunction against PlaceWare's continuing use of Pixion's trade secrets.

### THIRD CLAIM FOR RELIEF: PATENT INFRINGEMENT
(Damages and injunctive relief)

57. Plaintiff incorporates the allegations in the preceding paragraphs.

58. Pixion is the owner of the '313 patent.

59. PlaceWare has manufactured, used, offered for sale, distributed and/or sold products, including web conferencing software, that infringe Pixion's rights under the '313 patent.

60. Under 35 U.S.C. § 284, PlaceWare is liable for damages adequate to compensate Pixion for infringement of Pixion's rights, but in no event less than a reasonable royalty for the uses made of the invention by PlaceWare, together with interest and costs. Under the same statute, PlaceWare is also liable to Pixion for increased damages equal to three times its actual damages.

61. Under 35 U.S.C. § 283, Pixion is entitled to preliminary and permanent injunctions against PlaceWare's infringing conduct, and to the impoundment and destruction of all infringing materials. PlaceWare's infringement interferes with Pixion's ability to control the use of its patented technology, and interferes with Pixion's ability to establish and create business relationships. PlaceWare's infringement is likely to have continuing deleterious effects on Pixion's business, diminishing its market presence and depriving it of profits.

## FOURTH CLAIM FOR RELIEF: PATENT INFRINGEMENT
### (Declaratory judgment)

62. Plaintiff incorporates the allegations in the preceding paragraphs.

63. Pixion is the owner of the '313 patent.

64. PlaceWare has manufactured, used, offered for sale, distributed and/or sold products that utilize, incorporate and/or encompass the apparatus or methodology of the '313 patent.

65. Pixion seeks a judicial declaration that PlaceWare has infringed and is infringing the '313 patent. Such a declaration is necessary and appropriate, in order to determine the parties' rights and to avoid a multiplicity of lawsuits.

## FIFTH CLAIM FOR RELIEF: TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1051 et seq., Cal. Bus. & Prof. Code § 41200 et seq. and California common law)

66. Plaintiff incorporates the allegations in the preceding paragraphs.

67. Pixion is the owner of the federally registered trademark "Capture Frame," which it began using in 1996. PlaceWare has made commercial use of the Capture Frame mark, which is conduct likely to cause confusion, to cause mistake or to deceive. Pixion has sustained commercial, competitive injury as a result.

68. PlaceWare is liable under 15 U.S.C. § 1114, and also under 15 U.S.C. § 1125(a). Under 15 U.S.C. § 1117, Pixion is entitled to recover PlaceWare's profits and the damages sustained by Pixion, plus treble damages and a reasonable attorney's fee. Under 15 U.S.C. § 1116, Pixion is also entitled injunctive relief against PlaceWare's infringing conduct.

69. PlaceWare is liable under California Bus. & Prof. Code § 14320. Under California Bus. & Prof. Code §§ 14330 and 14340, Pixion is entitled to recover up to three times PlaceWare's profits and up to three times Pixion's damages, plus injunctive relief against PlaceWare's infringing conduct.

COMPLAINT AND JURY DEMAND 15

70. PlaceWare is liable for damages under the California common law tort of unfair competition. Because PlaceWare has acted with oppression, fraud or malice, it is also liable for punitive damages under California Civil Code § 3294(a).

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable of right to a jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Pixion demands against Defendant PlaceWare for:

(1) Damages caused by PlaceWare's breaches of contract;.

(2) Damages caused by PlaceWare's misappropriation of Pixion's trade secrets and the unjust enrichment of PlaceWare resulting therefrom, and in any event not less than a reasonable royalty for PlaceWare's use and disclosure of Pixion's trade secrets;

(3) Exemplary damages equal to twice the actual damages caused by PlaceWare's misappropriation of trade secrets, plus an award of Pixion's reasonable attorney's fees;

(4) Damages caused by PlaceWare's acts infringing Pixion's patent rights, in an amount not less than a reasonable royalty for PlaceWare's use of Pixion's invention, together with interest and costs;

(5) Increased damages equal to three times the actual damages caused by PlaceWare's acts of patent infringement;

(6) Preliminary and permanent injunctive relief against PlaceWare's continuing breaches of contract, trade secret misappropriation and patent infringement;

(7) A declaration that PlaceWare has infringed and is infringing Pixion's patent rights;

(8) Damages caused by PlaceWare's acts infringing Pixion's trademark;

(9) Increased damages equal to three times the actual damages caused by PlaceWare's acts of trademark infringement, and punitive damages; and

(10) Any other relief to which Pixion may show that it is entitled.

Dated: June 23, 2003

SPENCER HOSIE (CA Bar 101777)
JAMES T. McCARTT (CA Bar 121983)
HOSIE, FROST, LARGE & McARTHUR
One Market – Spear Tower #2200
San Francisco, CA 94105
Telephone: 415-247-6000

By _____
Spencer Hosie

Attorneys for Plaintiff Pixion, Inc.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Pixion, Inc. and its shareholders – Tarquin Limited (majority shareholder) and approximately 60 other shareholders (individuals and family trusts, with the exception of Gerald Klauer Mattison & Co.)

Pixion, Inc.'s directors – William Dorman, Patrick Volkar, R.W. Pollock, Karen Meredith and Robert DeKoning

PlaceWare, Inc. and its parent corporation, Microsoft Corporation

PlaceWare, Inc.'s directors

_____
Attorney of Record for Plaintiff Pixion, Inc.